IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TODD HECKMAN | : | |
| | : | |
| v. | : | Civil No. CCB-12-664 |
| | : | |
| RYDER TRUCK RENTAL, INC., *et al.* | : | |

**MEMORANDUM**

Plaintiff Todd Heckman brought this action against defendants Ryder Truck Rental ("Ryder") and Mickey Truck Bodies ("Mickey") for serious injuries sustained after a door strap attached to one of the defendants' trucks broke while Heckman was delivering beer for his employer, Wantz Distributors, Inc. ("Wantz"). The following motions are fully briefed and pending before the court: (I) Mickey's and Ryder's Motions to Exclude Heckman's experts; (II) Ryder's Motion to Strike and for Sanctions related to affidavits Heckman submitted with its opposition to Ryder's motion for partial summary judgment; (III) motions for summary judgment on (A) Heckman's claims alleging negligent inspection and maintenance of the truck, and (B) Heckman's products liability claims, assumption of risk, and contributory negligence. Oral argument was heard on June 10, 2013, on all but the motions for summary judgment on products liability, assumption of risk, and contributory negligence. No further argument is necessary.

**BACKGROUND**

On March 6, 2009, Heckman and an associate, Jeremy McAfee, were delivering beer to the Sandy Hook Grocery Store in Knoxville, Maryland. According to McAfee, who was the only witness to the incident (Heckman has no memory of the events leading up to his injuries), Heckman stepped up onto the truck and attempted to open one of the side garage-style doors,

1

which was stuck, by pulling on the door's strap which was wedged under the door. This strap is ordinarily used to close the door, and is not supposed to hang outside the truck at any time. As Heckman pulled, the strap broke, and he fell backward into the street where he was struck by an oncoming SUV. Randy Spigler, the Wantz employee who responded to the accident, testified that the hand strap broke into two pieces – a longer portion that was lying on the ground and a smaller portion that was still bolted inside the door. (Spigler Dep. at 71-72, 81). The strap apparently broke off at the point where it passes underneath the door. (*Id.* at 81). This testimony is undisputed.[1]

Heckman filed this action against Mickey and Ryder alleging they are liable for his injuries for various reasons. First, Heckman advances a number of negligence and strict products liability theories against Mickey, as manufacturer of the truck: (1) Mickey's redesign of its door straps in 2003, narrowing them from 1.75 inches to 1 inch, made the strap more susceptible to fraying or wear, contributing to the strap's failure; (2) a label warning that "DOOR ROLLERS AND DOOR STRAPS MUST BE CHECKED ON A REGULAR BASIS. DAMAGED OR FRAYED STRAPS MUST BE REPLACED" was legally inadequate both in content and location; and (3) the strap had a manufacturing defect that made it weak or susceptible to wear. Second, Heckman argues that Ryder owed a duty to properly inspect and maintain the truck. Heckman alleges that Ryder breached this duty and that it is fully or partially (depending on whether the strap was designed or manufactured defectively) responsible for the strap failure. Heckman also brings his products liability claims against Ryder, as supplier of the truck.

---

[1] Previously, Heckman alleged that Mickey was liable for design defects related to the strap's grommet attachment to the door, but in light of this undisputed testimony that the strap did not break at the grommet, this defect claim appears moot. (*See also* Butler Dep. at 18 ("From what I understand, the only defect that's been identified is the single thickness of the strap at the grommet as opposed to double thickness. I understand that happened after 2005. So I would say it's unlikely that defect existed with straps when the trailer was delivered by Mickey.")).

2

# ANALYSIS

## I. Motions to Exclude Heckman's Experts

Mickey has filed a motion to exclude three of Heckman's experts – Dennis McGarry (materials expert), Thomas Butler (materials expert), and Stanley Pulz (human factors expert). Ryder has joined Mickey's objections against these experts and also objected to Heckman's fourth expert, Brooks Rugemer (trucking inspections expert). Under Rule 702, "a witness is qualified as an expert by knowledge, skill, experience, training, or education . . . if:"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*See also Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592-595 (1993) ("The inquiry envisioned by Rule 702 is . . . a flexible one."). A district court is afforded "great deference . . . to admit or exclude expert testimony." *TFWS, Inc. v. Schaefer*, 325 F.3d 234, 240 (4th Cir. 2003) (citations omitted). "In applying *Daubert*, a court evaluates the methodology or reasoning that the proffered scientific or technical expert uses to reach his conclusion; the court does not evaluate the conclusion itself." *Id.*

### A. McGarry and Butler

Mickey argues that McGarry's and Butler's opinions should be excluded under Rule 702 and *Daubert*. Despite Mickey's insistence that both experts have no reliable basis for their conclusions, however, both experts appear to offer reliable testimony. Both have affirmed several of the other's independent findings, and both appear to have used observations or testing of straps like the one that broke, reports of the incident, and their knowledge and expertise to opine on what force would be required to break the strap and why it might have failed.

3

Importantly, both experts do not, anywhere, conclusively state "a" reason for the failure, they merely state the likely reasons the door strap may have failed. (*See, e.g.*, Mickey Mot. Exclude, ECF No. 30, Exs. 11 ("McGarry Rep.") & 13 ("Butler Rep.")). While the defendants are likely entitled to exclude those portions of Butler and McGarry's testimony that have been shown to be purely speculative,[2] Heckman would at least be able to introduce their testimony explaining the strength of the material and the conclusions they have drawn from testing. Accordingly, the defendants' motions to exclude these experts will be denied without prejudice.[3]

### B. Pulz

Mickey has also moved to exclude Heckman's warnings expert, Stanley Pulz. Mickey principally argues that Pulz's conclusion that Mickey had a duty to place adequate warning stickers on the truck concerning the door straps was not based on appropriate or generally accepted standards for determining what potential hazards require warnings and the requisite scope of such warnings. Because, as explained below, Mickey and Ryder are entitled to summary judgment on this issue irrespective of Pulz's testimony, Mickey's motion to exclude Pulz will be denied as moot.

### C. Rugemer

In addition to joining Mickey's motion, Ryder has moved to exclude Heckman's fourth expert, Brooks Rugemer, who addresses inspection and maintenance standards. Rugemer has

---

[2] For example, McGarry's expert report stated that there was a "strong possibility that the strap was [a] . . . weakened single-ply strap," (McGarry Rep. at 8), but it is now undisputed that the strap that broke did not break at the grommet and that whether it was a single-ply strap is irrelevant. *See* footnote 1 *supra*. Similarly, Butler concluded that "it is reasonably certain that [the strap] was either defectively manufactured *or* sufficiently worn to allow it to break when Mr. Heckman pulled on it." (Butler Rep. at 14) (emphasis added). In his deposition, however, Butler elaborated that the "defect" theory is "the weaker of [his] suggestions[,]" because he admitted there is no evidence of any manufacturing or design defect. (Butler Dep. at 18).
[3] If this case proceeds to trial, the court will discuss with counsel a more specific identification of the opinions that may be offered.

decades of experience in commercial trucking, and he concludes based on an assessment of available testimony and reports of the incident that "Ryder's failure to properly inspect the door straps and replace any found to be unsuitable is a failure of the standard of care for a truck and trailer leasing and maintenance operation." (Pl.'s Opp. Ryder's Mot. Exclude, ECF No. 46, Ex. 21 ("Rugemer Rep.")). Ryder argues that this conclusion is erroneous because Rugemer identifies no formal statute or regulation requiring strap inspections and there is no factual basis for his conclusion that Ryder failed to inspect the straps.

Nonetheless, Rugemer's testimony is likely admissible. Because Rugemer is an "experiential expert," his

> expert testimony . . . does not rely on 'anything like a scientific method.' . . . But this does not lead to a conclusion that 'experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.' . . . While a district court's task in examining the reliability of experiential expert testimony is therefore somewhat more opaque, the district court must nonetheless require an experiential witness to 'explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'

*United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee note). Thus, Heckman must only show that Rugemer has sufficient experience and that his conclusions concerning Ryder's inspection failures are based on the facts before him. In his expert report, Rugemer bases his conclusion that Ryder did not meet its standard of care in inspecting the truck on (1) evidence that it knew or should have known frayed or worn straps needed to be replaced, (2) evidence that Ryder's inspection forms did not expressly include an entry confirming inspection of door straps until 2011, two years after the incident, (3) a lack of any other documentary evidence that straps were indeed examined or checked during Ryder inspections, and (4) his experience with maintenance, strap use, and strap wear. (*See* Rugemer

5

Rep. 2-4). Ryder certainly can point to testimony that Ryder's practice was to inspect straps and that Rugemer's conclusion ignores Ryder's compliance with all state and federal regulations, but that is proper cross-examination material, not a basis for excluding what appears to be a reliable expert opinion. Ryder may be entitled to exclude certain parts of Rugemer's testimony, such as what appears to be a categorical, conclusory statement that Ryder did in fact "fail" to inspect the straps, but Rugemer is qualified to testify at least about the appropriate standard of care in the industry for inspecting door straps and the lack of documentation by Ryder. Accordingly, Ryder's motion to exclude Rugemer will be denied without prejudice.

## II. Ryder's Motion to Strike and for Sanctions

Ryder has filed a motion to strike affidavits of experts McGarry, Butler, and Rugemer, submitted with Heckman's opposition to Ryder's motion for partial summary judgment, that Ryder claims contain "new" undisclosed opinions in violation of Rule 26(a). Under Rule 26(a)(2)(B), for each expert it designates, a party must submit a written report that includes, among other requirements:

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions

*Carr v. Deeds*, 453 F.3d 593, 602 (4th Cir. 2006). "Rule 37(c)(1) provides that '[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.' . . . It is the burden of the party facing sanctions to show that the failure to comply was either substantially justified or harmless." *Id.* (quoting Rule 37(c)(1)).

In its reply to Heckman's opposition to Ryder's motion for partial summary judgment

(ECF No. 45), Ryder points to several examples of arguably "new" opinions in the affidavits not based on previously disclosed expert opinions. McGarry states in his affidavit, apparently for the first time, that the wear and tear needed to weaken the strap to the point of breaking would have been longer than six months. (Ryder's Reply, ECF No. 45, Ex. 5 ¶ 6). Similarly, Butler states, for the first time in his affidavit, that the fraying on the strap would likely have taken longer than six months. (Ex. 9 ¶ 4). Rugemer's affidavit also includes a previously undisclosed opinion that such wear and tear would have taken at least six months. (Ex. 12 ¶ 6).[4]

It would seem that Heckman, concerned about the possibility that a factfinder might decide the inspection schedule Ryder followed was enough to infer that it had met its duty to maintain the straps, decided to "augment" his expert opinions with these affidavits to suggest that the wear and tear needed to weaken the strap so that Heckman could break it should have been detected by Ryder at the inspection before his accident. However, there is sufficient evidence in the reports and depositions of these experts to infer that the strap was likely worn or frayed when it broke, that this wearing may have been apparent when the truck was last inspected, and that Ryder may have been negligent in not replacing it. Thus, as explained below, there is no need for Heckman to rely on these affidavits to defeat summary judgment.[5] Nevertheless, because they are unnecessary and suspect, the court will set aside the three affidavits for purposes of resolving the pending partial summary judgment motions between Ryder and Heckman. Accordingly, Ryder's motion to strike will be granted.

---

[4] Ryder also suggests that other opinions stated in the expert affidavits are "new," particularly opinions that the strap was likely frayed or worn when it was broken. But, as demonstrated above, the expert reports themselves strongly suggest that the strap must have been worn for it to have snapped, so these opinions are neither baseless nor previously undisclosed.

[5] After McGarry's affidavit was filed with his opposition brief, Heckman subsequently produced a supplemental expert report from McGarry that now includes the "six month" estimate on the strap's wear based on additional testing. (*See* Pl.'s Mot. Summ. J., ECF No. 48, Ex. 25 ("McGarry Supp. Rep.")).

**III. Motions for Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

**A. Heckman and Ryder's Cross Motions for Partial Summary Judgment[6]**

Ryder and Heckman have cross moved for summary judgment on Heckman's negligent maintenance and inspection claim. Their motions turn on a paradigmatic tort dispute: whether Ryder had a duty to inspect the door straps and whether it breached that duty. It appears there are genuine issues of material fact on both of these questions, and that neither party is entitled to summary judgment.

Ryder's argues that there is "no evidence" it owed a duty to inspect the straps or that it breached such a duty, but this argument is unconvincing. "Where the failure to exercise due care creates a risk . . . of personal injury, no . . . direct relationship need be shown, and the principal determinant of duty becomes foreseeability." *Jacques v. First Nat'l Bank of Maryland*, 515 A.2d 756, 759-60 (Md. 1986). "Two of the relevant factors to consider in determining whether such a duty should be recognized are 'the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties.' . . . Such a relationship may be established in a number of ways: (1) by statute or rule; (2) by contractual or other private relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party." *Grimes v. Kennedy Krieger Institute, Inc.*, 782 A.2d 807, 842 (Md. 2001) (citations omitted). Once a duty to render services is established, one may breach that duty where "his failure to exercise reasonable care . . . increases the risk of [physical] harm, or . . . the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts

---

[6] Heckman's motion was not filed as a cross-motion, but it addresses the same issues as Ryder's. Furthermore, the parties both have correctly conflated Heckman's tort and contract claims regarding Ryder's maintenance since both claims turn on the same issues. *See Jacques*, 515 A.2d at 759 ("Where a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of such duty is a tort and the injured party may have his remedy by an action on the case, or he may waive the tort and sue for the breach of the contract.") (citation omitted).

§ 323. Furthermore, "compliance with a statute does not necessarily preclude a finding of negligence or product defectiveness where a reasonable person would take precautions beyond the statutorily required measure[,] . . . [b]ut where no special circumstances require extra caution, a court may find that conformity to the statutory standard amounts to due care as a matter of law." *Beatty v. Trailmaster Products, Inc.*, 625 A.2d 1005, 1014 (Md. 1993).

Here, there is a sufficient factual basis to find Ryder had a duty and breached it, because Heckman has adduced evidence that (all citations are to Pl.'s Mot. Summ. J., ECF No. 48):

- The contract between Ryder and Wantz expressly stated that Ryder assumed responsibility for "all maintenance" of the truck. (Ex. 8 ("Lease and Service Agreement") ¶ 2).

- Ryder's employees have testified that the company did, in fact, assume responsibility for maintenance and inspection of the truck. (*See, e.g.*, Ex. 12 ("Faith Dep.") at 42-47).

- Ryder's inspections allegedly included inspecting the straps, indicating Ryder believed this was a part of its maintenance responsibility. (*See id.*).

- Mickey's instruction manual that accompanied the truck, an "engineering directive" from 1995, and the warning label on the truck all indicated door straps must be inspected and changed when they are worn. (*See* Ex. 6 ("Mickey Directive"); Ex. 7 ("Sink Dep.") at 144-45)). Thus, a "special circumstance" may have existed putting Ryder on notice of this maintenance need, even if it was not included in any state or federal regulation.

- Heckman's materials experts both determined the strap was likely worn or frayed when it broke, because a healthy strap would not have broken with the force

10

Heckman could have applied to it. (*See* Ex. 5 ("Butler Rep."); Ex. 25 ("McGarry Rep.")). There is also evidence that the door straps often hang outside the truck and wear over time. (*See, e.g.*, Ex. 1 ("Strong Dep.") at 140-43).

- Heckman's trucking maintenance expert determined that no documentary evidence indicated the straps were actually inspected when Ryder alleges they were. (Rugemer Rep. at 3; *see also* Ex. 14 ("Maintenance Logs") (the truck maintenance logs themselves say nothing about straps)). This expert also opines that a failure to inspect the straps would be a breach of the standard of care in his industry. (*Id.* at 4).

- Based on the testing of one expert (whose technique is vigorously disputed by Ryder), "[i]t is more likely than not that the wear damage to the subject Mickey strap was readily visible six months before the accident during inspection of Ryder." (Ex. 25 ("McGarry Supp. Rep.") at 1).

- Heckman's pulling the strap upwards to open the door, and its hanging outside of the trailer, were foreseeable uses of the straps. (*See, e.g.*, Strong Dep. at 140-43).

- But for the strap's breaking, Heckman would not have tumbled into traffic and suffered severe injuries.

Ryder argues that Heckman adduced no evidence it breached any law or regulation, nor any actual, direct evidence of the condition of the strap when it broke. Both of these assertions may be true, but, as noted above, compliance with the law is not a per se defense where a plaintiff can show a breach of a standard of care. Circumstantial, as well as expert, evidence strongly suggests that the strap was indeed worn or it would not have broken. Similarly, Ryder's undisputed assertion that it conducted an inspection and maintenance on Heckman's truck less than six weeks before the accident says nothing about whether the maintenance and inspection it

11

conducted was sufficient. The mere fact an inspection was conducted does not mean it was conducted well. A reasonable jury could conclude, based on Ryder's knowledge of the need to inspect and replace worn straps, the likelihood the strap was severely worn, and the strap's failure, that Ryder did not meet its duty to properly inspect and maintain the trailer.

That said, Ryder's strongest argument in its favor is the testimony that the straps were visually inspected routinely: this suggests the straps were inspected shortly before the accident, and that the wear and tear that may have weakened the strap could have occurred after Ryder's last inspection. Furthermore, a reasonable jury could conclude that there is insufficient evidence the strap was visibly or detectably worn, that Ryder did not have a duty to "test" the strap beyond a visual inspection (expert Rugemer does not suggest strap inspections needed to be particularly sophisticated or thorough), and, thus, that the accident, though unfortunate, was not caused by any failure on Ryder's part. Finally, Ryder alleges that Heckman and Wantz had a duty, within the commercial trucking industry under federal law, to inspect the truck before use each day, and their negligence supersedes any failure on Ryder's part. But, Ryder points to no specific provision regarding door strap inspections, and its contract with Wantz clearly states it assumed a duty to conduct "all maintenance" on the vehicle as lessor.

Thus, Heckman and Ryder's dispute turns on whether a factfinder could reasonably conclude that the straps were not properly maintained by Ryder; Heckman has put forward substantial, plausible evidence that they were not. Accordingly, both motions for summary judgment on this issue will be denied.

### B. Mickey's, Ryder's, and Heckman's Cross Motions for Summary Judgment on products liability, contributory negligence, and assumption of risk

As explained below, the defendants are entitled to summary judgment on Heckman's product liability claims, but not on the issues of contributory negligence and assumption of risk.

### 1. Design and Manufacturing Defects

To recover on a products liability claim in Maryland, a plaintiff must prove that "(1) the plaintiff was the user or consumer of an alleged defective product; (2) the defendant was the seller of the product and at the time of sale was engaged in the business of selling such a product; (3) at the time of sale the product was defective; (4) the product reached the plaintiff without substantial change in the condition in which it was sold; (5) the defect made the product unreasonably dangerous to the plaintiff; and (6) the defect proximately caused plaintiff's injuries." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 407 (D. Md. 2001) (citing *Phipps v. General Motors Corp.*, 363 A.2d 955, 959 (Md. 1976)); Restatement (Second) of Torts § 402A (1965). "A product defect can arise from the design of the product, a deficiency in its manufacture, or from the absence or inadequacy of instructions or warnings as to its safe and appropriate use." *Id.* "The elements of proof are the same whether the claim [is] characterized as one for strict liability or negligence[.]" *Id.* (quoting *Watson v. Sunbeam Corp.*, 816 F. Supp. 384, 387 n.3 (D. Md. 1993) (internal citations omitted)); *see also Ford Motor Co. v. General Accident Ins. Co.*, 779 A.2d 362, 369-70 (2001). "[P]roof of a product defect may be adduced by one or more of three legitimate paradigms: (1) direct proof based on the nature of the accident in the context of the particular product involved; (2) circumstantial proof based on an inference of a defect from a weighing of several factors; and (3) direct affirmative proof through opinion testimony by an expert witness." *Shreve*, 166 F. Supp. 2d at 407-08.

Here, Heckman has adduced no evidence under any of these paradigms to support any inference that the strap had a design or manufacturing defect. Both of Heckman's materials experts independently determined that the strap that broke, in good condition, could not have been broken by Heckman because he could not have applied the required 1800 pounds of force.

(*See* McGarry Dep. at 107-08; Butler Dep. at 21). While the parties squabble over whether a design change in the strap in 2003 (narrowing it) made it more "susceptible to fraying," no expert testimony or other evidence specifically supports that conclusion. What both experts do conclude is that the strap was weakened or frayed when it broke. It is also undisputed that the truck was under Ryder's exclusive care for years after it left Mickey's control. In other words, Heckman's experts support Mickey's contention that the breaking strap was not its fault because both experts concluded that the strap was designed to withstand more force than Heckman could have put on it, and neither had any basis to conclude the strap that broke was somehow defective. (*See, e.g.*, Butler Dep. at 17-18, 51 "**Q:** Can you identify any defect then in your opinion that existed at the time that Mickey delivered the trailer . . . **A:** . . . No. I can't think of anything that's been identified."); McGarry Dep. at 108 ("My assumption was that it was a worn strap and that somehow it was damaged to the point that it failed below 300 pounds of force.")).

Heckman vigorously argues that Mickey did not make sufficient efforts in its manufacturing and design process to ensure that the strap was strong enough to use. Heckman similarly argues that because the strap was apparently not made of nylon, as Mickey first represented, but another synthetic material, it did not conform to Mickey's design specifications and is defective. All of these assertions, even if they were proven, could not overcome the conclusion of Heckman's own experts, after extensive testing and analysis, that the strap would not have broken in good condition and that a new Mickey strap could have withstood Heckman's force. Accordingly, Heckman has adduced no evidence of any design or manufacturing defect, and Mickey and Ryder are entitled to judgment as a matter of law on such claims.[7]

---

[7] Heckman also has submitted an affidavit under Rule 56(d) seeking additional discovery from Mickey on the manufacturer of the door strap and the material used to make the strap. (*See* Rule 56(d) Affidavit, ECF No. 67-71). While "[a] district court . . . must refuse summary judgment

## 2. Failure to Warn

Mickey erroneously argues, however, that a failure to warn claim must automatically fail in the absence of a design or manufacturing defect. In Maryland, "[a] product defect can arise from the design of the product, a deficiency in its manufacture, *or* from the absence or inadequacy of instructions or warnings as to its safe and appropriate use." *Shreve*, 166 F. Supp. 2d at 407 (citing Maryland law) (emphasis added). The "reasonableness of any warning" is an independent basis for liability. *Id.* Thus, a manufacturer may be liable for placing a product on the market that bears inadequate instructions and warnings. *Hood v. Ryobi Am. Corp.*, 181 F.3d 608, 610 (4th Cir. 1999). But, the duty is to give a "reasonable warning, not the best possible one." *Nolan v. Dillon*, 276 A.2d 36, 40 (1971). To decide if a warning is adequate, Maryland courts ask if the benefits of a more detailed warning outweigh the costs of requiring the change. *Ryobi*, 181 F.3d at 611. The price of more detailed warnings is greater than their printing fees; it also takes into account whether additional details will undermine the effectiveness of warnings altogether. *Id.*

In light of this authority, although a plaintiff *may* prevail on a failure to warn claim even in the absence of a manufacturing or design defect, the defendants are entitled to summary judgment on Heckman's failure to warn claim. Even fully accepting the testimony of Heckman's human factors expert Stanley Pulz, that expert opinion is the only evidence Heckman has

---

where the nonmoving party has not had the opportunity to discover information that is essential to its opposition[,]" *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, --- F.3d ----, 2013 WL , at *9 (4th Cir. 2013) (quotation marks, brackets, and citations omitted), here, Heckman has had ample time to depose witnesses, serve interrogatories, and conduct substantial expert testing, including in rebuttal to several arguments advanced by the defendants. Heckman does not explain how the additional information he seeks could overcome the fact established by his own experts that the strap was, in good condition, capable of withstanding 1800 pounds of force, a fact that precludes any finding of a manufacturing and design defect. Accordingly, Heckman is not entitled to additional discovery.

adduced stating that Mickey inadequately warned of the danger of breaking door straps. But, the sole basis of Pulz's opinion is an overbroad interpretation of the testimony of Mickey's corporate designee, Greg Sink, who explained that Mickey placed a warning sticker on the truck concerning frayed straps because "obviously, [the strap] could be a safety hazard if it was frayed or damaged." (Pl.'s Opp., Ex. 19 ("Sink Dep."), ECF No. 67-20, at 145). Pulz took this statement as conclusive evidence that Mickey was aware a strap could break in the manner Heckman was using it and that this knowledge imposed a duty on Mickey to warn door users not to use the strap to open the door. (*See* Mickey Mem. Summ. J., Ex. 21 ("Pulz Dep."), ECF No. 62-23, at 43-44 ("I would go back to the representatives of Mickey and his determination that a hazard existed with the use of the strap, and that's what I'm basing my opinions on now.")). Beyond interpreting Mickey's statement as a broad admission that it knew the strap could break when being used as it was in Heckman's accident, Pulz offers no other basis to infer that Mickey should have placed more or better warnings on its trucks regarding using straps to open the doors. The rest of Pulz's expert report and testimony concerns his opinions on the best form for the purportedly essential warnings, assuming such a duty to warn existed. (*See* Pl.'s Opp., Ex. 35 ("Pulz Expert Report"), ECF No. 67-36).

      Heckman's claim fails for several reasons. First, a manufacturer "need not warn of every mishap or source of injury that the mind can imagine flowing from the product." *Liesener v. Weslo, Inc.*, 775 F. Supp. 857, 861 (D. Md. 1991). While it may have been foreseeable that Heckman would use the strap in the manner he did, this fact does not automatically lead to a duty to warn. Heckman has adduced no evidence—no expert opinion, no industry standard, nor any other authority—to support his claim that Mickey was legally obligated to include additional warning labels on each door warning a user not to use the straps to open the door. As explained

above, Pulz's opinion that Mickey was under such a duty was not based on any evidence or research regarding this hazard other than interpreting Mickey's statement regarding the need to replace door straps to mean that Mickey knew such a hazard existed. But, even if Mickey knew of this possibility, Mickey points out that there is no evidence a door strap has ever caused the another incident like Heckman's. *See Ryobi*, 181 F.3d at 611 (noting, in rejecting a failure to warn claim, that the plaintiff "identified only one fifteen-year-old incident similar to his"). Heckman has therefore failed to demonstrate that a warning on this specific hazard was indeed legally warranted. Second, even if such a hazard were more common, "[w]ell-meaning attempts to warn of every possible accident lead over time to voluminous yet impenetrable labels—too prolix to read and too technical to understand." *Ryobi*, 181 F.3d at 611; *see also Liesener*, 775 F.Supp. at 861. Mickey trucks already include a multitude of warnings, including a warning that frayed straps must be replaced, (*see* Mickey Mem. Mot. Summ. J., Ex. 4 ("Warning Labels"), ECF No. 62-6), and an additional array of stickers on the truck's body would only have minimized the effectiveness of those labels already present. *See Ryobi*, 181 F.3d at 611 (noting that "the proliferation of label detail threatens to undermine the effectiveness of warnings altogether").

Finally, although Heckman admits that his truck did contain a warning label stating that frayed straps must be replaced, he asserts, through Pulz's expert testimony, that the label was not placed prominently enough and that it was not in the proper form under the applicable American National Standards Institute ("ANSI") standards. But the label's primary purpose appears to be to direct proper maintenance of the truck, not the user's behavior, (*see* Mickey Mot. Summ. J, Ex. 5 ("Directive"), ECF No. 62-7), and in this regard there is no evidence it was inadequate. Pulz's opinion as to its inadequacy focuses exclusively on its alleged failure to properly warn a

user of a hazard, not someone performing maintenance on the truck. (*See* Pl.'s Opp., Ex. 35 ("Pulz Expert Report"), ECF No. 67-36, at 1-2). Furthermore, "[w]here a warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Lightolier, A Div. of Genlyte Thomas Group, LLC v. Hoon*, 876 A.2d 100, 111 (Md. 2005) (quoting Restatement (Second) of Torts § 402A). The undisputed evidence shows that a new strap would not have broken with the force Heckman applied to it. So, Mickey could safely assume that its warning to replace damaged straps would have been heeded, and there is no need for an additional warning related to the straps breaking where straps are "checked on a regular basis" and replaced when necessary. (*See* Warning Labels, ECF No. 62-6). Accordingly, the court finds that a warning label specifically related to the hazard that caused Heckman's injury was not warranted, and the defendants are entitled to summary judgment on Heckman's failure to warn claim.

### 3. Assumption of Risk and Contributory Negligence

The defendants are not entitled to judgment as a matter of law, however, on their assertion that Heckman was contributorily negligent or assumed the risk of his injuries. In Maryland, contributory negligence "means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntarily incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs." *Poole v. Coakley & Williams Const., Inc.*, 31 A.3d 212, 224 (Md. 2011) (brackets and quotation omitted). "Either defense may

exist without the other, but, of course, '[t]he same conduct on the part of the plaintiff may ... amount to both assumption of risk and contributory negligence, and may subject [the plaintiff] to both defenses.'" *Id.* (quoting *Schroyer v. McNeal*, 592 A.2d 1119, 1122 (Md. 1991); Restatement (Second) of Torts § 496A cmt. d). "[A] 'subjective' knowledge standard is applied to assumption of the risk, and an 'objective' or "reasonable person" standard is applied to contributory negligence." *See id.* at 225-26, 226 n.10.

The defendants argue that Heckman assumed the risk of his accident, and was contributorily negligent, by parking the truck where he did, obviously in close proximity to oncoming traffic, using the strap to unjam the truck door, and leveraging himself precariously on the wheel well of the truck. But, because Heckman's delivery practices and use of the door strap to open the door were not, apparently, uncommon practices, (*see, e.g.*, Pl.'s Opp., Exs. 53-57 (deposition excerpts), ECF Nos. 67-54–58), and because the defendants readily assert in challenging Heckman's negligence and products liability claims that the door strap accident was unexpected and unique, (*see, e.g.*, Mickey Mem. Mot. Summ. J., ECF No. 62-1, at 15-16), a genuine issue of material fact exists as to whether Heckman acted negligently or assumed a known risk in using the strap as he did. In fact, Mickey asserts that its doors have been opened and closed "6.3 billion" times without any similar incident involving the door straps, (*see id.* at 6), casting serious doubt that Heckman knew or should have known he was putting himself in danger by using the strap to open the door. Similarly, Ryder's assertion that Heckman was in the best position to determine whether the strap was damaged or frayed and probably would have known if it was frayed is not evidence that Heckman actually examined the strap, or that he should have, nor that it was visibly frayed from his perspective at the moment he used it. While a reasonable jury could conclude that Heckman did assume a risk or negligently contribute to the

accident in such a way as to preclude recovery, a jury could likewise find that Heckman, having used the strap and delivered beverages similarly and repeatedly in the past, reasonably did not expect the strap to fail in this instance. Accordingly, the defendants are not entitled to summary judgment on the issue of contributory negligence or assumption of risk.

## CONCLUSION

For the reasons stated above, the defendants' motions to exclude Heckman's experts will be denied without prejudice; Heckman's motions for summary judgment will be denied; Ryder's motion to strike will be granted; and Ryder's motion for summary judgment on Heckman's negligent maintenance and inspection claims will be denied. The defendants' motions for summary judgment on Heckman's product liability claims will be granted, but the defendants are not entitled to summary judgment on the issue of contributory negligence or assumption of risk. Summary judgment will be granted in favor of Mickey as to all claims against it, and in favor of Ryder on all but Heckman's negligent maintenance and inspection claims (counts I and III of the complaint)

A separate Order follows.

|  8/21/13  |  /s/  |
|---|---|
| Date | Catherine C. Blake |
|  | United States District Judge |