IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TODD HECKMAN | * | |
| | * | |
| v. | * | Civil No. CCB-12-664 |
| | * | |
| RYDER TRUCK RENTAL, INC., et al. | * | |

\*\*\*\*\*\*

**MEMORANDUM**

Plaintiff Todd Heckman brought this action against defendants Ryder Truck Rental ("Ryder") and Mickey Truck Bodies ("Mickey") for serious injuries sustained after a door strap attached to one of the defendants' trucks broke while Heckman was delivering beer for his employer, Wantz Distributors, Inc. On August 21, 2013, the court granted summary judgment in favor of Ryder on all but Heckman's negligent maintenance and inspection claims, and in favor of Mickey as to all claims against it.[1] Now pending before the court are (A) Mickey's motion for entry of a final judgment, (B) Ryder's motion to exclude the supplemental report of Heckman's expert, Dennis McGarry, and for summary judgment on Heckman's remaining negligent maintenance and inspection claims and (C) Heckman's motion to strike new expert opinions offered in Ryder's reply memorandum in support of its motion to exclude and for summary judgment. The issues in this case have been fully briefed, and no hearing is necessary. *See* Local R. 105.6. For the reasons stated below, the court will deny Mickey's, Ryder's, and Heckman's motions.

---

[1] The court determined, however, that Ryder and Mickey were not entitled to judgment as a matter of law on their assertion that Heckman was contributorily negligent or assumed the risk of his injuries.

1

ANALYSIS

**A. Mickey's Motion for Entry of a Final Judgment**

Mickey moves for entry of a final judgment in its favor and against Heckman. Federal Rule of Civil Procedure 54(b) states:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Acknowledging the importance of avoiding piecemeal appeals, the Fourth Circuit has explained that a Rule 54(b) certification is "the exception rather than the norm." *Braswell v. Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993). Indeed, "it is settled that certification of a judgment as to a claim or party in a multi-claim or multi-party suit is disfavored in the Fourth Circuit." *Bell Microproducts, Inc. v. Global-Insync, Inc.*, 20 F. Supp. 2d 938, 942 (E.D. Va. 1998).

The Supreme Court in *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980), outlined a two-part test for determining whether a Rule 54(b) certification is warranted. "A district court must first determine that it is dealing with a 'final judgment.'" *Id.* at 7. A judgment "must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). Second, "the district court must go on to determine whether there is any just reason for delay." *Id.* at 8. Among the relevant factors in determining whether there is any just reason for delay are:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the

> judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Braswell*, 2 F.3d at 1335–36 (citations omitted). The party seeking a Rule 54(b) certification bears the burden of satisfying the above two-part test. *Id.* at 1335.

Here, Mickey fails to show this case warrants certification, as the risks of piecemeal litigation outweigh the potential benefits of entering a final judgment. Heckman's product liability claims against Mickey arise out of the same facts that precipitated his claims against Ryder. His claims against Mickey and Ryder involve the same fact witnesses. Likewise, the experts he plans to call at trial against Ryder also have opined on the design of Mickey's door strap. At trial, there will likely be testimony on the issues of contributory negligence and assumption of the risk; those issues could have implications for Mickey's liability. Thus, if the court were to enter a final judgment in favor of Mickey, it could result in two separate appeals proceeding at different times but involving the same facts, witnesses, experts, and issues. In light of its concerns for judicial economy, the court will deny Mickey's motion for entry of a final judgment.

**B. Ryder's Motion to Exclude and for Summary Judgment**

Ryder moves to exclude McGarry's testimony as it relates to the findings and opinions contained in his supplemental report dated April 16, 2013.[2] In the supplemental report, McGarry attempted to simulate the wear caused when a synthetic-fiber strap hangs outside the door of a moving trailer. According to Ryder, McGarry's supplemental report contains flawed testing not

---

[2] The supplemental report first appeared as an exhibit to Heckman's opposition to Ryder's earlier motion to exclude expert testimony, (*see* ECF No. 46-19), and was also included with Heckman's memorandum in support of his motion for partial summary judgment against Ryder, (*see* ECF No. 48-27). Ryder deposed McGarry on October 15, 2013, to question him on the supplemental report.

supported by generally accepted scientific principles. Moreover, Ryder asserts that, without McGarry's testimony, Heckman has no evidence regarding the condition of the door strap at the time of Ryder's inspection five weeks prior to the accident and cannot proceed to trial based on "sheer speculation" the strap was damaged or worn.

   **1.  Motion to Exclude McGarry**

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The party seeking to introduce expert testimony has the burden of establishing its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 n.10 (1993). A district court is afforded "great deference . . . to admit or exclude expert testimony under *Daubert*." *TFWS, Inc. v. Schaefer*, 325 F.3d 234, 240 (4th Cir. 2003) (citations and internal quotation marks omitted); *see also Daubert*, 509 U.S. at 594 ("The inquiry envisioned by Rule 702 is . . . a flexible one . . . ."). "In applying *Daubert*, a court evaluates the methodology or reasoning that the proffered scientific or technical expert uses to reach his conclusion; the court does not evaluate the conclusion itself," *Schaefer*, 325 F.3d at 240, although "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In essence, the court acts as gatekeeper, only admitting expert testimony where the underlying methodology satisfies a two-pronged test for (1) reliability and (2) relevance. *See Daubert*, 509 U.S. at 589.

Turning to McGarry's testimony in his supplemental report, the court is satisfied that it meets the requirements of Rule 702 and *Daubert*. Despite Ryder's assertion that McGarry does not have adequate knowledge regarding wear testing of synthetic material, he is a materials engineer, who has taught several university classes on failure analysis, including one involving failure analysis of plastic materials, (*see* Dec. 3, 2012, McGarry Dep., ECF No. 91-6, at 128:1–3, 131:2–9), and has been involved in approximately ten to fifteen cases concerning similar web material used as straps, seatbelts, and load-bearing slings, (*see* Dec. 3, 2012, McGarry Dep., ECF No. 91-5, at 14:4–12).[3] In those cases, he analyzed why the web material broke, whether it was damaged when it broke, and whether other factors played a role in its failure. (*See* Dec. 3, 2012, McGarry Dep., ECF No. 91-5, at 14:4–15:13.) McGarry, in short, is qualified to testify as an expert on wear testing of synthetic-fiber straps.

Furthermore, McGarry's testing was rationally designed to simulate the effect of the strap rubbing along the edge of the trailer. In preparation for his testing, he inspected the trailer, (*see* McGarry Rep., ECF No. 30-13, at 5), and reviewed police photographs taken at the scene of the accident, including photographs of the failed strap, as well as deposition testimony from Randy Spigler, who saw the broken strap at the accident scene, (*see* Oct. 15, 2013, McGarry Dep., ECF No. 91-17, at 218:8–219:2; *see also* Spigler Dep., ECF No. 91-16, at 81:10–82:18). Although Ryder asserts that McGarry does not know what material the strap at issue was made of, he stated it was made of nylon, and Mickey's corporate representative, Dean Sink, confirmed that, at the time of Heckman's accident, Mickey straps were made of nylon. (*See* Oct. 15, 2013, McGarry Dep., ECF No. 91-7, at 188:21–189:16; *see also* June 27, 2013, Sink Dep., ECF No.

---

[3] To the extent Ryder argues that McGarry is unqualified because he has not testified in other cases regarding the exact kind of strap at issue in this case, the court does not find this argument persuasive. He has been involved in cases with substantially similar issues. (*See* Dec. 3, 2012, McGarry Dep., ECF No. 91-5, at 19:4–8, 19:18–20.)

91-8, at 471:3–15.) Based on all this information, McGarry constructed a test rig, to which he attached eight new Mickey straps. (McGarry Supp. Rep., ECF No. 48-27, at 5–6.) To simulate the strap hanging outside the door of the trailer, he allowed the straps to hang over the edge of the rig. (*Id.* at 6; *see also* Oct. 15, 2013, McGarry Dep., ECF No. 91-29, at 203:2–15.) McGarry then observed the wear caused to the straps after "one million cycles," which is "equivalent to over 5,500 starts and stops per day for six months."[4] (McGarry Supp. Rep. at 6–7.) His methodology, clearly explained in his supplemental report and elaborated upon in his deposition testimony, is replicable and would be helpful to the trier of fact.

Ryder challenges McGarry's supplemental report on the grounds that he did not consider how other factors—including weather conditions, the effect of salt from the road, and the effect of using the strap to open a stuck door—may have affected the condition of the strap, did not test the potential wear of the strap on a truck that was moving at constant speed, and did not test whether compression damage might decrease the strength of the strap. But McGarry only undertook to examine the wear caused by a strap rubbing against a truck as it accelerates and decelerates, and his study was rationally designed to accomplish that limited goal. Thus, Ryder's arguments, although appropriate fodder for cross-examination, do not alter the court's conclusion that McGarry's methodology is reliable under Rule 702(c). *See Daubert*, 509 U.S. at 596; *see also Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (reasoning that, "[s]o long as

---

[4] In a November 25, 2013, affidavit, McGarry clarified that "starts and stops" refers to accelerations and decelerations, or "all the changes in velocity one would expect to occur in normal use of a tractor trailer." (Nov. 25, 2013, McGarry Aff., ECF No. 91-23, at 2.) As explained by McGarry, "[t]his includes but is not limited to changes in velocity for differences in topography, embankments, road conditions, weather, road construction, traffic conditions, starting, stopping, increasing speed, decreasing speed, etc." (*Id.* at 2–3.) Ryder argues that McGarry's affidavit contradicts his earlier deposition testimony, but the court does not agree. McGarry's supplemental report explained that "there is an obvious potential for wear as the vehicle accelerates and decelerates," and he referred to "acceleration" in describing the motion of the test rig. (McGarry Supp. Rep. at 5–6.)

the methods employed are scientifically valid, . . . mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony"). In other words, those arguments go only to the weight of McGarry's testimony, not its admissibility. *See TFWS, Inc.*, 325 F.3d at 240. The court will not exclude McGarry's testimony as it relates to his supplemental report.

### 2. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

Ryder cannot satisfy the above standard because, as this court stated previously in its September 6, 2013, Order, even without McGarry's supplemental report, there is still a genuine, material dispute as to whether Ryder had an obligation to inspect the door straps on the truck and whether it did so when it inspected Heckman's truck five weeks before the accident.  (*See* ECF No. 76.)  A reasonable jury could infer, based on other expert testimony[5] submitted by Heckman, that the strap was likely damaged or worn when it broke, given the reduction in its strength that must have occurred for it to have broken under the force Heckman applied to it, and that Ryder should have detected such damage or wear during its inspection.  Simply put, Heckman need not, as suggested by Ryder, have direct evidence of the condition of the strap at the time of Ryder's inspection to defeat its motion for summary judgment.  Accordingly, Ryder's motion will be denied.

### C.  Heckman's Motion to Strike

Heckman moves pursuant to Federal Rule of Civil Procedure 12(f) to strike any reference in Ryder's reply memorandum to a report made by engineering expert Gregory J. Paulsen.  In the alternative, should the court deny his motion, Heckman requests an opportunity to take Paulsen's deposition and to file a surreply thereafter.  Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Rule 12(f) motions are disfavored and, thus, federal courts generally require the moving party to establish how the disputed materials prejudice him.  *Asher & Simons, P.A. v. j2 Global Canada, Inc.*, 965 F. Supp. 2d 701, 705 (D. Md. 2013).

---

[5] For example, another of Heckman's experts, Thomas Butler, testified that Heckman would not have been able to break the strap had it been in good condition.  (*See* Butler Rep., ECF No. 48-7, at 21.)

Although Heckman argues that he is prejudiced by his inability to challenge Paulsen's testimony, which was not disclosed until Ryder's reply memorandum in support of its motion to exclude and for summary judgment, it appears Heckman has in fact had the opportunity to depose Paulsen. As explained by Ryder, it offered Paulsen to Heckman's counsel for a deposition, and a deposition was scheduled for January 29, 2014. Ryder also affirmed that it was making copies of the photographs taken by Ryder and would provide those to Heckman's counsel in advance of the deposition. Since January 29, 2014, Heckman has filed nothing to indicate that Paulsen was not deposed, nor has he filed a proposed surreply or a motion to exclude Paulsen from testifying.[6] The court, therefore, cannot conclude that Heckman is prejudiced by Paulsen's testimony, and will deny Heckman's motion to strike.

## CONCLUSION

For the reasons stated above, Mickey's motion for entry of a final judgment will be denied, Ryder's motion to exclude McGarry's supplemental report and for summary judgment will be denied, and Heckman's motion to strike new expert opinions offered in Ryder's reply memorandum will be denied. A separate order follows.

July 9, 2014  
Date

/s/  
Catherine C. Blake  
United States District Judge

---

[6] Nor did the court grant Ryder's motion to exclude McGarry's supplemental report, which was not submitted until April 2013 and to which Paulsen responds.